| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| M&G USA CORPORATION, *et al.*, | ) | Case No. 17-12307 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| M&G Polimeros Brasil S.A., | ) | |
| | ) | |
| Plaintiff. | ) | Adversary Case No: |
| v. | ) | |
| | ) | |
| M&G Polymers USA, LLC and COMERICA BANK, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR IMPOSITION OF A CONSTRUCTIVE TRUST

M&G Polimeros Brasil S.A. ("Polimeros"), by and through its undersigned attorneys, for its Complaint against M&G Polymers USA, LLC ("M&G Polymers") and Comerica Bank ("Comerica") seeking imposition of a constructive trust over inventory and receivables attributable and owed to Polimeros, alleges as follows:

## NATURE OF THIS ACTION

1.     This action is necessary to prevent a grave injustice. Absent imposition of a constructive trust or other appropriate relief, compensation due and owing to Polimeros for product manufactured and sold by Polimeros will unfairly end up in the pocket of Comerica—an entity with absolutely no interest in Polimeros and no involvement in the manufacture or sale of Polimeros product.

2.     In the three months leading up to these chapter 11 cases, M&G Polymers sold, on behalf of Polimeros, approximately BRL 81 million, or approximately $25 million, of

polyethylene terephthalate ("PET") product manufactured by Polimeros. Presently, M&G Polymers is holding not less than $10 million in proceeds generated from such sales  For purposes of this complaint, receivables resulting from the sale of PET manufactured by Polimeros, cash generated from such receivables, and any unsold product possessed by M&G Polymers are referred to collectively as the "Polimeros Property."

3.      The *only* reason that M&G Polymers has (or will receive) the Polimeros Property is because M&G Polymers has acted as a conduit for sales of Polimeros product to U.S. customers. Because M&G Polymers has a back office and other administrative capabilities that Polimeros does not, Polimeros has used M&G Polymers as a middleman for sales. But M&G Polymers has **no** legitimate rights in the Polimeros Property; it has no actual ownership of the product that passes through on its way to U.S. customers of Polimeros and no right to the monies that those U.S. customers remit to M&G Polymers for payment back to Polimeros. On the contrary, M&G Polymers has a duty to remit the proceeds generated from the sale of Polimeros product to Polimeros.

4.      That the Polimeros Property is neither property nor assets of the Debtors' estates has been explicitly recognized by the Debtors and their Chief Restructuring Officer ("CRO"). Indeed, prior to the Petition Date, the CRO took specific steps to formalize the historic course of dealing between Polimeros and M&G Polymers in order to ensure that Polimeros would receive all proceeds from the sale of Polimeros product other than a small administrative fee to M&G Polymers for conducting such transactions.

5.      On a postpetition basis, and as described in the Debtors' Cash Management Motion (the "Cash Management Motion"), *see* [Docket No. 7], this formalized process was further modified so that the sale of Polimeros Property would be done through M&G Resins.

2

Consistent with the prepetition process put in place by the CRO, the Cash Management Motion provides that Polimeros will receive the proceeds from sales of Polimeros PET to U.S. customers because such sales are conducted via M&G Resins only "for administrative convenience." *See id.* at ¶ 22. As with the prepetition steps taken by the CRO, the provisions in the Cash Management Motion make at least one thing very clear: ***the Polimeros Property does not belong to the Debtors; it belongs to Polimeros.***

6. Yet despite this clear, fair, and logical provision, Polimeros' right to be compensated for sales of its own PET product is now threatened by Comerica, an entity with no contractual or other relationship to Polimeros and no legitimate interest in the Polimeros Property. Indeed, based on all information presently known to Polimeros, Comerica has had absolutely no dealings with Polimeros whatsoever.

7. What Comerica *does* have is a purported security interest in the inventory and receivables of M&G Polymers. Comerica is a lender to M&G Polymers under a $50,000,000 Amended and Restated Master Revolving Note dated December 21, 2015. This loan is secured by a September 30, 2015 Security Agreement, which provides Comerica with a security interest in "Collateral", defined under the Security Agreement as follows: "all of the following property Debtor now or later owns or has an interest in, wherever located: all Accounts and Accounts Receivable . . . all Inventory . . . all cash . . . of or pertaining to the above Collateral, . . . and all of Debtor's vendor data customarily supplied with the goods, product specifications and material safety data sheets pertaining to the Debtor's Accounts, Accounts Receivable and Inventory." Based on this Security Agreement, Comerica claims that it is entitled to all of M&G Polymers' accounts receivable and inventory—including the Polimeros Property.

PHIL1 6754853v.1

8.      Comerica is wrong as a matter of fact and law.  The Polimeros Property does not comprise "Accounts Receivable and Inventory" of M&G Polymers because, to the extent that M&G Polymers is in (or obtains) possession of the Polimeros Property, it is solely by virtue of its role as an conduit for Polimeros' sales to U.S. customers.  That the property passes through M&G Polymers does not and should not change the fact that it belongs to Polimeros; and must not be used as grounds to deprive Polimeros of compensation due and owing from the sale of its *own* PET product.

9.      The Polimeros Property should not be available to satisfy M&G Polymers' prepetition obligations to Comerica—or anyone else.  Accordingly, to prevent this injustice, Polimeros seeks imposition of a constructive trust, or other appropriate relief, with respect to the Polimeros Property, including all receivables due for Polimeros product already sold, and unsold Polimeros PET product in M&G Polymers' possession at the time of the bankruptcy filing in this matter.

## THE PARTIES

10.     Polimeros is a Brazilian company whose registered office is located at Km 10 Rodovia PE-60 – Engenho Massangana, TDR – Sul s/nº - Complexo Industrial Portuário, SUAPE - Ipojuca – CEP 55590-000 C.N.P.J.: 07.079.511/0001-9.

11.     Defendant M&G Polymers is a Delaware limited liability company with its principal place of business located at State Route 2, Apple Grove, West Virginia, 25502.  On October 24, 2017 (the "Polymers Petition Date"), M&G Polymers commenced a bankruptcy proceeding under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 17-12307.

PHIL1 6754853v.1

12.     Defendant Comerica is a corporation organized and existing under the laws of the State of Texas.  Upon information and belief, M&G Polymers has certain outstanding prepetition obligations to Comerica that are secured by, among other things, certain accounts receivable of M&G Polymers.

## JURISDICTION AND VENUE

13.     This adversary proceeding is commenced pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001.

14.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), as well as the "Amended Standing Order of Reference" of the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).

15.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O).

## VENUE

16.     Venue is proper pursuant to 28 U.S.C § 1409(a) because this proceeding is related to Case No. 17-12307, which was brought by Debtors including M&G Polymers,[1] pursuant to the Bankruptcy Code and is currently pending in this Court.

## FACTUAL BACKGROUND

### A.     M&G POLYMERS ACTS AS CONDUIT FOR THE SALE OF POLIMEROS' PRODUCT TO U.S. CUSTOMERS.

17.     In the ordinary course of business, Polimeros supplies PET to both Brazilian and U.S. customers.  With respect to Brazil, sales are accomplished on a direct basis.  In the U.S.,

---

[1]     The Debtors in Case No. 17-12307, along with the last four digits of each debtor's federal tax identification number, are: M&G USA Corporation (3449), M&G Resins USA, LLC (3236), M&G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M&G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments, Inc. (9208). The Debtors' service address is:  450 Gears Road, Suite 240, Houston, Texas 77067.

PHIL1 6754853v.1

sales are accomplished by using M&G Polymers as a pass-through entity or middleman.[2]  M&G Polymers' sale of PET produced by Polimeros is simple and straightforward:  Polimeros sends PET product to M&G Polymers, title for the PET product passes from Polimeros to M&G Polymers, receivables for the PET product immediately accrue at Polimeros when M&G Polymers receives the PET product, and journal entries are kept at M&G Polymers to document such accruals.

18.     M&G Polymers then provides the PET product to U.S. customers and collects payment from these customers intended for Polimeros.  As recognized by the Debtors and the CRO, the reason for this arrangement is pure administrative convenience.  Given their logistics capabilities and location in the U.S., M&G Polymers is more easily able to handle billing and other back-office functions related to U.S. sales.   M&G Polymers withholds a small administrative fee for its services out of the proceeds generated from the sale of the PET product, but M&G Polymers is not required to pay interest to Polimeros for the funds collected by M&G Polymers on behalf of Polimeros.

19.     Crucially, both M&G Polymers and Polimeros have plainly understood—at all relevant times—that the PET in question is being sold by Polimeros and that, accordingly, Polimeros is entitled to payment for its product and M&G Polymers has a duty to ensure that Polimeros receives such payment.  The customers of M&G Polymers themselves know that the product is coming from Polimeros.  M&G Polymers records journal entries when the receivables accrue and M&G Polymers has no right to the receivables for the PET sold on behalf of Polimeros.  On the contrary, M&G Polymers *is required* to cause the intercompany receivables

---

[2]     Though never implemented, the Debtors (as described in the Cash Management Motion) planned to modify this historic course of dealing on a postpetition basis by having Debtor M&G Resins USA LLC serve as a middleman for future sales of PET product manufactured by Polimeros.  *See* [Docket No. 7 at ¶ 23].

PHIL1 6754853v.1

resulting from the sale of Polimeros PET product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly relates to the charge to the customer for the PET product and the payment from the customer.

20.     On average, M&G Polymers moved approximately $10 million of PET product on behalf of Polimeros per month through 2016. Unfortunately, prior to the appointment of the CRO in 2017, millions of dollars in receivables for Polimeros PET product never made it out of M&G Polymers because of mismanagement, misplaced efforts to plug liquidity gaps elsewhere in the M&G structure, and/or potentially fraudulent conduct. Instead these receivables— receivables which rightfully belonged to Polimeros—were utilized by M&G Polymers for other purposes, leaving Polimeros with nothing more than an ever-growing intercompany receivable. That intercompany receivable, which now stands at approximately $90 million, is plainly owed to Polimeros for M&G Polymers' sale of Polimeros' PET product, and remains outstanding as of the Polymers Petition Date. [3]

21.     The full extent of M&G Polymers' improper withholding of Polimeros' inventory and receivables was not fully comprehended until the fall of 2017 when the CRO, in connection with other interested parties, took steps to investigate the situation. Before that point, Polimeros remained under the control of the Debtors' Chief Executive Officer, Marco Ghisolfi (or management loyal to him) and, as a result, no effort could be made to object to the failure by M&G Polymers to remit monies collected on Polimeros' behalf.

22.     Following appointment of the CRO, however, protections were instituted to ensure that the intent of the course of dealing between Polimeros and M&G Polymers was

---

[3]     The large and as-yet-unsatisfied intercompany receivable due from M&G Polymers to Polimeros for Polimeros product sales engineered through M&G Polymers prior to Magnate's control of Polimeros will be addressed through claims in the Bankruptcy case. This adversary proceeding concerns inventory and outstanding receivables for Polimeros sales under the auspices of the CRO, following his appointment.

7

honored and Polimeros would no longer be unfairly denied receivables rightly owed for the sale of Polimeros PET product by M&G Polymers as an intermediary or conduit.

23.     Specifically, beginning in September 2017, the CRO took steps to formalize the system for conducting pass-through transactions from Polimeros through M&G Polymers to U.S. customers.  Under this new arrangement, Polimeros sent PET product to M&G Polymers to be sold in the U.S. market and invoiced M&G Polymers for the cost of such PET product.  M&G Polymers was then obligated to use the proceeds generated by the PET product sales to satisfy the invoices of Polimeros, while retaining any excess proceeds to cover its own administrative functions.   The primary purpose of the new system was to ensure proper payment and accounting; M&G Polymers' historic role as an administrator and conduit for receivables from the sale of Polimeros PET product was to remain unchanged.

24.     This formalized arrangement between Polimeros and M&G Polymers was maintained by the Debtors until the Polymers Petition Date, but because of the relatively short time frame, no actual receivables were collected by M&G Polymers for the sale of Polimeros PET product prior to the Polymers Petition Date.  Additionally because of this short time frame, certain of the Polimeros PET product provided to M&G Polymers by Polimeros for sale to U.S. customers remained at M&G Polymers as of the Polymers Petition Date.

25.     Subsequent to the Polymers Petition Date, as described more fully in the Debtors' Cash Management Motion, the CRO revised the administrative arrangement so that, moving forward, Polimeros would no longer provide PET product to M&G Polymers, but to M&G Resins.  *See* [Docket No. 7 at ¶ 23].[4]  But the fair—and logical—underpinning to the CRO's

---

[4]     As described *supra*, this postpetition process, though referenced in the Cash Management Motion, was never fully implemented by the Debtors.  At present, there is no ongoing sale by the Debtors of PET product manufactured by Polimeros.

PHIL1 6754853v.1

approach remains unchanged: Polimeros should receive the proceeds from the sale of Polimeros PET product to U.S. customers where such sales are conducted "for administrative convenience." *See id.* As described in the Cash Management Motion, such transactions "maximize and appropriately allocate value for the materials and services the Debtors and their affiliates provide." *Id.* at ¶ 25.

**B. THE FINAL ORDER GIVES COMERICA EXCLUSIVE CONTROL OVER THE POLIMEROS INVENTORY AND RECEIVABLES PREVIOUSLY HELD BY M&G POLYMERS.**

26. Absent appropriate relief from this Court, the steps taken by the CRO to ensure that Polimeros was no longer robbed of its receivables and product, but instead received compensation for the Polimeros Property, will be swept aside by Comerica's interpretation of its security interest in M&G Polymers' assets. Indeed, M&G Polymers and Comerica seek to deny Polimeros any receivables or compensation for the Polimeros Property—property that M&G Polymers is obligated to remit to Polimeros—by claiming that inventory and receivables that belong to Polimeros but happen to be in the possession of M&G Polymers should be available to satisfy M&G Polymers' prepetition obligations to Comerica. M&G Polymers and Comerica take this position without regard to the fact that, as described above, M&G Polymers handled Polimeros' product and related receivables "for administrative convenience" *only*, and had no right to retain it (for its own use or for the benefit of its creditors) without adequately compensating Polimeros. To the contrary, M&G Polymers must compensate Polimeros for the pass-through sale of Polimeros PET product.

27. Comerica is a lender to M&G Polymers under a $50,000,000 Amended and Restated Master Revolving Note dated December 21, 2015. This loan is secured by a September 30, 2015 Security Agreement which provides Comerica with a security interest in "Collateral," defined under the Security Agreement as follows: "all of the following property

9

Debtor now or later owns or has an interest in, wherever located: all Accounts and Accounts Receivable . . . all Inventory . . . all cash . . . of or pertaining to the above Collateral, . . . and all of Debtor's vendor data customarily supplied with the goods, product specifications and material safety data sheets pertaining to the Debtor's Accounts, Accounts Receivable and Inventory." As a result of a default by M&G Polymers on the Comerica Loan, Comerica filed a complaint on October 20, 2017, with the United States District Court for the Eastern District of Michigan seeking the appointment of a receiver to take control of the collateral securing the Comerica Loan. The Debtors were unable to resolve this dispute and, as a result, M&G Polymers commenced its chapter 11 case on the Polymers Petition Date.

28.     Despite the fact that M&G Polymers and its CRO acknowledge that the sale of Polimeros' PET product to U.S. customers was done for "administrative convenience," and should therefore be remitted to Polimeros, on Secember 14, 2017, this Court entered an *Final Order Pursuant to 11 U.S.C §§ 105, 361, 362, 363 AND 507 (1) Authorizing Use of Cash Collateral (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [Docket No. 487] (the "Final Order"), which, among other things, places all proceeds of accounts and accounts receivable of M&G Polymers and the sales and other dispositions of M&G Polymers' inventory under the exclusive control of Comerica pending resolution of any Challenge (as defined in the Final Order). Specifically, the Final Order provides that "Comerica shall receive payment of the Prepetition Obligations (as defined in the Final Order) from the proceeds of the Prepetition Collateral (as defined in the Final Order) and Post-Petition Collateral (as defined in the Final Order) as set forth in paragraphs 4 and 8 (collectively, the "Adequate Protection Payments")." (Docket No. 487 at ¶ 5(a)).

PHIL1 6754853v.1

29.     Paragraph 8 of the Final Order, governing "Application of Proceeds of Collateral

to Prepetition Obligations," further provides:

(a) ***All proceeds of Accounts and Accounts Receivable of Debtor and the sales
and other dispositions of Inventory of Debtor, upon receipt by Debtor at any
time after entry of the Interim Order (other than amounts on deposit in the
Comerica Collateral Account), including amounts subject to paragraph 4(b) of
this Final Order, shall be delivered to Comerica in the form received, and
deposited into a segregated cash collateral account (account ending in \*452)
maintained by, and under the exclusive control of, Comerica (the "<u>Comerica
Collection Account</u>").     The mere depositing of cash into the Comerica
Collection Account shall not, in and of itself, prejudice the rights of any party to
assert a superior interest in such cash***.

(b) Upon the expiration of the Challenge Period, and subject to the funding
obligations in paragraph 4, Comerica shall have the right to and may apply to the
Prepetition Obligations any cash in the Comerica Collateral Account and any cash
now or hereafter on deposit in the Comerica Collateral Account, in each case, that
is not the subject of a Challenge without further Court Order.  If a Challenge is
made during the Challenge Period, then, upon the resolution of the Challenge,
Comerica shall have the right to apply to the Prepetition Obligations any cash in
the segregated cash collateral account that is subject to such Challenge in
accordance with the resolution of the Challenge at the time of such resolution.

(c) Notwithstanding anything to the contrary in this Final Order, Comerica shall
not have the right to apply to the Prepetition Obligations any cash in the Comerica
Collection Account or the Comerica Collateral Account except in accordance with
this paragraph 8.

(Docket No. 487 at ¶ 8(a–c)) (emphasis added).

30.     The proceeds of M&G Polymers' accounts and accounts receivable and the sales

and other dispositions of M&G Polymers' inventory, which are being diverted to Comerica to

satisfy M&G Polymers' prepetition obligations to Comerica, improperly include the Polimeros

Property—receivables and inventory handled and held by M&G Polymers on behalf of

Polimeros for administrative convenience only.

31.     The Polimeros Property is not—and never has been—"accounts receivable or

inventory" of M&G Polymers, is not properly part of the estate of M&G Polymers, and must not

be converted by Comerica in its effort to recover on its loan to M&G Polymers or any other party seeking to assert a claim in connection with M&G Polymers' bankruptcy.

## COUNT I - CONSTRUCTIVE TRUST
### (Against M&G Polymers and Comerica)

32.     Plaintiff realleges and incorporates Paragraphs 1 through 31 as if set forth fully herein.

33.     Though Polimeros Brazil had no contractual arrangement with M&G Polymers regarding M&G Polymers' role as an administrative conduit for sales of Polimeros product to U.S. customers, Polimeros relied on the ongoing assurances M&G Polymers gave to Polimeros that M&G Polymers would apportion payments collected for its sales of Polimeros' product to Polimeros in the form of intercompany receivables.

34.     The status of the two companies as subsidiaries of M&G Chemicals SA, as well as M&G Polymers' assurances that the receivables resulting from sales of Polimeros' PET product would be rightfully returned to Polimeros, among other things, created a relationship of trust and confidence between Polimeros and M&G Polymers.

35.     M&G Polymers was required to cause the intercompany receivables resulting from sales of Polimeros product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly related to and depended upon the charge to the customer for the product and the payment from the customer.

36.     The Polimeros receivables accrued immediately upon M&G Polymer's receipt of the product, and M&G Polymers kept journal entries to document that accrual.

37.     M&G Polymers was not required to pay interest to Polimeros for the funds collected by M&G Polymers on Polimeros' behalf.

12

38.     As a result of M&G Polymers' mismanagement or good faith but misplaced efforts to plug liquidity gaps elsewhere in the M&G structure (and potentially fraudulent conduct), millions of dollars in receivables for Polimeros' PET never made it out of M&G Polymers and M&G Polymers held Polimeros inventory worth millions of dollars prepetition.

39.     Based on the Final Order, Comerica presently has exclusive control over the Polimeros Property that was previously held by M&G Polymers.

40.     Because M&G Polymers acted as a mere conduit in collecting money on behalf of Polimeros and had no equitable interest over the Polimeros inventory or receivables, the Polimeros Property are not property of the M&G Polymers estate and it would be unfair to capture it in the property under Comerica's control.

41.     M&G Polymers and Comerica have been and continue to be unjustly enriched by retaining possession of the Polimeros Property, simply because M&G Polymers served an administrative function in transporting Polimeros' inventory to customers and collecting such receivables.

42.     Without the imposition of a constructive trust, more than $10 million due and owing to Polimeros for PET product it supplied to customers—for which Polimeros never received payment—would improperly become part of M&G Polymer's bankruptcy estate.  And Polimeros would be deprived of receivables obtained from sales of as-yet-unsold Polimeros product held by M&G Polymers and seized by Comerica.

43.     The Court should exercise its equitable power to impose a constructive trust for the benefit of Polimeros over the Polimeros Property previously held by M&G Polymers and now claimed by Comerica.

PHIL1 6754853v.1

## PRAYER FOR RELIEF

WHEREFORE, Polimeros respectfully prays that this Court enter a judgment in favor of Polimeros, and: (1) impose a constructive trust for the benefit of Polimeros over the Polimeros inventory and receivables previously held by M&G Polymers and now held by Comerica; (2) award Polimeros its costs, including reasonable attorneys' fees; and (3) grant Polimeros such other and further relief as the Court deems necessary or appropriate.

*{Remainder of Page Intentionally Left Blank}*

PHIL1 6754853v.1

| | |
|---|---|
| Dated: January 16, 2018<br>Wilmington, Delaware | */s/ Michael W. Yurkewicz* |

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti, Esq. (DE Bar No. 3989)
Michael W. Yurkewicz, Esq. (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone: (302) 426-1189
Facsimile: (302) 426-9193

-and-

Morton R. Branzburg, Esq. (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-2700
Facsimile: (215) 568-6603

-and-

**KIRKLAND & ELLIS LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Joshua Greenblatt (*pro hac vice* admission pending)
Jeremy David Evans, Esq. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to M&G Polimeros Brasil S.A.*

PHIL1 6754853v.1