## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M & G USA CORPORATION, *et al.*, | Case No. 17-12307 (BLS) |
| Debtors.[1] | Jointly Administered |

| | |
|---|---|
| M&G Polimeros Brasil S.A., | |
| Plaintiff, | Adv. Proc. No. 18-50007-BLS |
| v. | **Objection Deadline: February 22, 2018** |
| M&G Polymers USA, LLC and Comerica Bank, | |
| Defendants. | |

### Opening Brief in Support of Comerica Bank's Motion to Dismiss Adversary Proceeding

CONNOLLY GALLAGHER LLP
Karen C. Bifferato (DE Bar No. 3279)
Jeffrey C. Wisler (DE Bar No. 2795)
Kelly M. Conlan (DE Bar No. 4786)
The Brandywine Building
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 757-7300

MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
Jonathan S. Green, Esq.
Steven A. Roach, Esq.
Erika L. Giroux
150 West Jefferson, Suite 2500
Detroit, MI 48226
Telephone: (313) 963-6420

Counsel for Comerica Bank

Dated: February 8, 2018

---

[1] The Debtors are the following twelve entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): M & G USA Corporation (3449), M & G Resins USA, LLC (3236), M & G Polymers USA, LLC (7593), M & G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (1022), M&G Capital S.à r.l. (7812), M & G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062) and Indo American Investments, Inc. (9208). The Debtors' noticing address in these chapter 11 cases is 450 Gears Road, Suite 240, Houston, Texas 77067.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………… ii

Stage of Proceeding…………………………………………………………... 1

Summary of Argument………………………………………………………….. 1

FACTUAL BACKGROUND…………………………………………………….1

STANDARD OF REVIEW…………………………………………………….. 3

ARGUMENT……………………………………………………………………… 4

    A.  Brasil's Claim Is Controlled by State, Not Federal Law……………………… 4

    B.  Polymers and Brasil Had a Contract, and Texas Law Governs the Contract… 5

    C.  Constructive Trust in Not a Cause of Action Under Texas Law……………… 6

    D.  Brasil Has Failed to Allege the Elements of a Constructive Trust………… 7

CONCLUSION…………………………………………………………………. 12

# TABLE OF AUTHORITIES

**Pages**

Cases

*Aquaplex, Inc. v. Rancho la Valencia, Inc.,*
  297 S.W.3d 768 (Tex. 2009)...................................................................................... 7
*ARA Auto. Grp. v. Cent. Garage, Inc.,*
  124 F.3d 720 (5th Cir. 1997) ................................................................................... 8
*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009).................................................................................................. 3
*Associated Indem. Corp. v. CAT Contracting, Inc.,*
  964 S.W.2d 276, 287 Tex. 1998 ............................................................................... 7
*Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.),*
  377 B.R. 478 (Bankr. D. Del. 2007) ............................................................... passim
*Azzata v. Am. Bedding Indus., Inc.,*
  432 B.R. 115 (Bankr. D. Del. 2010) ........................................................................ 3
*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007).................................................................................................. 3
*Burtch v. Milberg Factors, Inc.,*
  662 F.3d 212 (3d Cir. 2011)..................................................................................... 3
*Claybrook v. Consol. Foods, Inc. (In re Bake-Line Grp., LLC),*
  359 B.R. 566 (Bankr. D. Del. 2007) ........................................................................ 5
*Connelly v. Lane Constr. Corp.,*
  809 F.3d 780 (3d Cir. 2016)..................................................................................... 3
*Endeavor Energy Res., L.P. v. Heritage Consol., LLC (In re Heritage,*
  *Consol., LLC),* 765 F.3d 507 (5th Cir. 2014)........................................................... 7
*Fluor Enters., Inc. v. Orion Ref. Corp. (In re Orion Ref. Corp.),*
  341 B.R. 476 (Bankr. D. Del. 2006) ................................................................. 4, 10
*Haber Oil Co. v. Swinehart (In re Haber Oil Co.),*
  12 F.3d 426 (5th Cir. 1994) ............................................................................. 7, 11
*Kedra v. Schroeter,*
  876 F.3d 424 (3d Cir. 2017)..................................................................................... 3
*Monnig's Department Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Department*
  *Stores, Inc.),*
  929 F.2d 197 (5th Cir. 1991) ............................................................................... 7, 9
*Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic*
  *Diocese of Wilmington, Inc.),*
  432 B.R. 135 (Bankr. D. Del. 2010) ........................................................................ 5
*Official Committee of Unsecured Creditors v. Columbia Gas Systems (In re Columbia Gas*
  *Systems, Inc.),*
  997 F.2d 1039 (3d Cir. 1993)............................................................................ 4, 8, 9
*Rankin v. Naftalis,*
  557 S.W.2d 940 (Tex. 1977)..................................................................................... 8
*Roach v. Berland,*
  No. 3:13-CV-4640-D, 2014 WL 6772612 (N.D. Tex. Dec. 2, 2014)........................ 6

*Schmidt v. Skolas*,
  770 F.3d 241 (3d Cir. 2014)............................................................................. 4

*Sherer v. Sherer*,
  393 S.W.3d 480 (Tex. App. 2013)................................................................... 6

*The Cadle Co. v. Mims (In re Moore)*,
  608 F.3d 253 (5th Cir. 2010) .......................................................................... 6

*Tiare Int'l, Inc. v. United Fixtures Co. (In re Interlake Material Handling, Inc.)*,
  441 B.R. 437 (Bankr. D. Del. 2011) ............................................................... 5

*Walser v. Tex. Music Group, Inc. (In re Antone's Records, Inc.)*,
  445 B.R. 758 (Bankr. W.D. Tex. 2011)........................................................... 7

*Williams v. Countrywide Home Loans, Inc.*,
  504 F. Supp. 2d 176 (S.D. Tex. 2007) ............................................................ 7

*Yaquinto v. Ward (In re Ward)*,
  558 B.R. 771 (Bankr. N.D. Tex. 2016)............................................................ 6

Rules

Federal Rule of Bankruptcy Procedure 7012................................................................. 1
Federal Rule of Civil Procedure 9(b)............................................................................. 7
Federal Rule of Civil Procedure 12(b)(6) .............................................................. 1, 3

Other Authorities

Uniform Commercial Code:  2-105, 2-106, 2-401(a), 9-102(20), 9-103(d), 9-322, and 9-324...... 1

## STAGE OF PROCEEDING

This is the first responsive pleading filed by Comerica regarding the Complaint.

## SUMMARY OF ARGUMENT

Plaintiff M&G Polimeros Brasil, S.A. ("Brasil") filed a Complaint for Imposition of a Constructive Trust [Ad. Proc. D.I. 1] ("Complaint") against Comerica Bank ("Comerica") and against M&G Polymers USA, LLC ("Polymers") on January 16, 2018, seeking the imposition of a constructive trust upon certain polyethylene terephthalate ("PET") product sold to Polymers by Brasil, and upon the cash proceeds derived from Polymers' sale of this PET product. Comerica has a perfected, first-priority lien on all Inventory and Accounts, including proceeds thereof, of Polymers. Final Cash Collateral Order (ECF 487), pp. 6-7, 33-35. Brasil fails to state a claim in its Complaint to support the existence of a constructive trust. A constructive trust is an extraordinary remedy, and the facts in the Complaint, even assuming them to be true for purposes of this Motion, evidence merely an ordinary commercial relationship involving a debt between a supplier and distributor. Plaintiff primarily relies upon this Court's opinion in *Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478 (Bankr. D. Del. 2007), and the following provisions of the Uniform Commercial Code: 2-105, 2-106, 2-401(a), 9-102(20), 9-103(d), 9-322, and 9-324, in addition to the other authority cited below.

## FACTUAL BACKGROUND

Prior to the Debtors' Chapter 11 bankruptcy filings, Polymers purchased PET product from Brasil, an affiliate of the Debtors. As Brasil concedes, this trade relationship was "simple and straightforward": Brasil shipped the PET to Polymers, "title for the PET product pass[ed]" from Brasil to Polymers, and Polymers recorded accrued accounts payable to Brasil in the normal course. Compl. ¶ 17. Brasil characterizes this relationship with Polymers as one of

"administrative convenience," for which Polymers withheld a "small administrative fee," but admits that "no contractual arrangement" documented this purported fee agreement. Compl. ¶¶ 18, 33.

Brasil alleges a change in its relationship with Polymers in September 2017, at which point Brasil began invoicing Polymers for the PET product. Compl. ¶ 23. Polymers allegedly obtained "no actual ownership" of the PET but used the proceeds from the sales of the PET to satisfy the receivables to Brasil. Compl. ¶¶ 3, 23. Brasil describes an approximation of a consignment relationship. Yet Brasil, as a matter of public record, never filed a UCC-1 financing statement to evidence an interest in the PET product, let alone a purchase-money security interest, nor did it provide notice to Comerica of any such interest. Brasil, therefore, has no legitimate claim to the PET or its proceeds. Comerica, on the other hand, filed its financing statement, and thereby perfected its security interest in the PET proceeds, as far back as September 30, 2013. Comerica is entitled to and should rightfully benefit from its diligence as a perfected first-priority secured creditor.

The terms of the relationship between Brasil and Polymers are clear from the purchase orders and invoices between the two companies, attached as Exhibit A. The purchase orders and invoices constitute a contract. The invoices require Polymers to pay the purchase price within 60 days of delivery. Texas law governs the contract. Not a single invoice or purchase order mentions, inter alia, the intention to create or existence of a trust, the calculation or payment of an administrative fee, or the price at which Polymers must sell the PET to its customers.[1] Not one of these documents even hints at an obligation on the part of Polymers to segregate the

---

[1] Indeed, the fact that the invoices contain both a set amount that Polymers is to pay Brasil and a set time for payment directly contradict Brasil's claim that Polymers was a mere conduit for which service Polymers was to receive an administrative fee.

proceeds of the PET sales or to provide an accounting to Brasil.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), a plaintiff must have pled "sufficient factual allegations . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility where it contains enough factual content to "allow[] the court to draw the reasonable inference that the defendant is liable for the alleged misconduct" and requires "more than a sheer possibility that the defendant acted unlawfully." *Iqbal*, 556 U.S. at 678. While the court accepts all well-pleaded allegations as true and construes them in the light most favorable to the plaintiff, *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d Cir. 2011), Rule 8's pleading standard demands more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678.

In evaluating a complaint under Rule 12(b)(6), the court must first "take note of the elements a plaintiff must plead to state a claim." *Burtch*, 662 F.3d at 221 (internal quotation marks omitted). The court should then "separate the factual and legal elements of a claim, accepting the facts and disregarding the legal conclusions," which are not "entitled to the assumption of truth." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Azzata v. Am. Bedding Indus., Inc.*, 432 B.R. 115, 119 (Bankr. D. Del. 2010). Finally, the court should determine whether the remaining factual allegations have "nudged the claim across the line from conceivable to plausible." *Kedra v. Schroeter*, 876 F.3d 424, 441 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 679-80). Although courts generally consider only the allegations in the complaint and attached exhibits, the court may also consider "document[s] *integral to or explicitly relied*

upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted) (emphasis in original). Therefore, since Brasil explicitly grounds its complaint in the transactions between itself and Polymers, the court may consider the purchase orders and invoices issued between Polymers and Brasil.

## ARGUMENT

### A.    Brasil's Claim Is Controlled by State, Not Federal Law.

This Court has previously determined the appropriate analysis for a constructive trust claim. *See Asurion Ins. Servs., Inc. v. Amp'd Mobile, Inc. (In re Amp'd Mobile, Inc.)*, 377 B.R. 478 (Bankr. D. Del. 2007). The Court will look to the factors enumerated in *Official Committee of Unsecured Creditors v. Columbia Gas Systems (In re Columbia Gas Systems, Inc.)*, 997 F.2d 1039 (3d Cir. 1993), the seminal case in the Third Circuit governing constructive trust claims in bankruptcy, to determine whether a constructive trust is appropriate. Where federal regulation pervasively governs the relationship between the pre-bankruptcy debtor and the claimant, the court should apply federal common law to vindicate the federal interest and to avoid creating inconsistent interpretations of the same federal statutory scheme. *Id.* at 1055-58 (noting that "[c]reditors cannot reasonably assume that state law will allocate various parties' interest in federally created property rights"). By contrast, where the creditor's claim does not arise out of a federal statute, the court will apply state law to evaluate whether the creditor has established the requisite elements for imposition of a constructive trust. *See Amp'd Mobile*, 377 B.R. at 483; *Fluor Enters., Inc. v. Orion Ref. Corp. (In re Orion Ref. Corp.)*, 341 B.R. 476, 483 (Bankr. D. Del. 2006).

Here, Brasil has not invoked—indeed, has not even cited to—any federal law or statute in support of its claim. That is because Brasil and Polymers had an ordinary contractual relationship for the sale of goods, subject to and governed by state implementations of the Uniform

Commercial Code. Therefore, this court should look to the relevant state law to assess Brasil's claim.

**B.    Polymers and Brasil Had a Contract, and Texas Law Governs the Contract.**

The Purchase Orders and Invoices (Exhibit A) between Brasil and Polymers make up the written contract ("Contract"), by which Brasil agreed to supply PET product to Polymers in exchange for payment. This Contract forms the basis for Brasil's Complaint, and Brasil continually refers to and relies on the Contract throughout the Complaint. The Contract explicitly states that it is governed by Texas law; therefore, Texas law also controls Brasil's constructive trust claim. *See also Tiare Int'l, Inc. v. United Fixtures Co. (In re Interlake Material Handling, Inc.)*, 441 B.R. 437, 441 (Bankr. D. Del. 2011); *Official Comm. of Unsecured Creditors v. Catholic Diocese of Wilmington, Inc. (In re Catholic Diocese of Wilmington, Inc.)*, 432 B.R. 135, 147 (Bankr. D. Del. 2010); *Claybrook v. Consol. Foods, Inc. (In re Bake-Line Grp., LLC),* 359 B.R. 566, 571 (Bankr. D. Del. 2007).

Additionally, the Contract between Polymers and Brasil clearly contemplates a sale of goods. *See* Tex. Bus. & Commercial Code Ann. § 2-105 (defining "goods" as "all things . . . movable at the time of identification to the contract for sale"); § 2-106 (defining "sale" as "the passing of title from the seller to the buyer for a price"). Brasil admits that title to the PET product passed to Polymers. Compl. ¶ 17. Brasil never filed a financing statement regarding the PET product and is therefore an unsecured trade creditor. *See* Tex. Bus. & Commercial Code Ann. § 9-322.

Even if this arrangement could at some point have become a consignment, *see id.* § 9-102(20), in that case Brasil would have been eligible for a purchase-money security interest in the PET collateral. *See id.* § 9-103(d). To obtain such an interest, however, Brasil would have been required to both file a financing statement *and* also provide notice to Comerica of its

interest. *See id.*§ 9-324(b). Brasil did neither and, therefore, retained no interest in the PET product. Regardless of the scenario, Texas law controls Brasil's claim.

Brasil alleges in Paragraph 3 of its complaint that Polymers "has no actual ownership of the" PET products, but rather, as alleged in Paragraph 6, "it belongs to" Brasil. As a result, Brasil might be alleging, without any contractual document to support the allegation, that it retained title to the PET products. However, under Texas Business & Commercial Code Ann. § 2-401(a), "Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." As noted above, Brasil failed to file a UCC-1 and therefore is an unsecured creditor.

Interestingly, Brasil candidly admits that the hyperbole in paragraphs 3 and 6 is not true, as Brasil admits in Paragraph 17 of its Complaint that "title for the PET product passes from [Brasil] to M&G Polymers" upon entry of the PET product into the United States. Brasil also admits in Paragraph 33 of its Complaint that there is no contractual documentation that exists to support its allegations.

## C.    Constructive Trust is Not a Cause of Action Under Texas Law.

Texas law does not recognize a constructive trust as an independent cause of action. *The Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010); *Roach v. Berland*, No. 3:13-CV-4640-D, 2014 WL 6772612, at *2 (N.D. Tex. Dec. 2, 2014). Rather, the imposition of a constructive trust is a remedy for a claim, such as breach of fiduciary duty or unjust enrichment, to prevent a defendant from benefiting from its wrongdoing. *Yaquinto v. Ward (In re Ward)*, 558 B.R. 771, 790 (Bankr. N.D. Tex. 2016) (quoting *Sherer v. Sherer*, 393 S.W.3d 480, 194 (Tex. App. 2013)). Brasil has not alleged any predicate cause of action in furtherance of which this court could impose a constructive trust upon Comerica's collateral.

D.      **Brasil Has Failed to Allege the Elements of a Constructive Trust.**

A constructive trust is an equitable remedy that courts impose sparingly. *See Walser v. Tex. Music Group, Inc. (In re Antone's Records, Inc.)*, 445 B.R. 758, 784 (Bankr. W.D. Tex. 2011) (stating that a constructive trust is to be imposed only to "prevent unjust enrichment resulting from an unconscionable act") (internal quotation marks omitted). This remedy requires some "wrongdoing greater than the nonpayment of a monetary debt." *Monnig's Department Stores, Inc. v. Azad Oriental Rugs, Inc. (In re Monnig's Department Stores, Inc.)*, 929 F.2d 197 (5th Cir. 1991). Under Texas law, the elements of a constructive trust are (1) actual fraud or a relationship of trust and confidence giving rise to a fiduciary duty; (2) unjust enrichment; and (3) tracing of the trust res. *Haber Oil Co. v. Swinehart (In re Haber Oil Co.)*, 12 F.3d 426, 437 (5th Cir. 1994).

Brasil has failed to allege actual fraud. To establish fraud, Texas law requires the plaintiff to offer evidence that the defendant made a (1) materially (2) false representation, (3) knowing that it was false, (4) with the intent that the other party rely on it, (5) and the other party so relied (6) and suffered harm thereby. *Aquaplex, Inc. v. Rancho la Valencia, Inc.* 297 S.W.3d 768, 774 (Tex. 2009) Brasil, at most, alleges the latter two. *See also* Fed. R. Civ. P. 9(b) (requiring a plaintiff to "state with particularity the circumstances constituting fraud").

Brasil has similarly failed to establish the existence of a fiduciary relationship between itself and Polymers. In the business context, a fiduciary duty requires that "the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 192 (S.D. Tex. 2007) (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 Tex. 1998)).  Thus, an ordinary business relationship, even where the parties have been engaged in a joint venture or partnership, is insufficient except in unusual circumstances. *Endeavor*

*Energy Res., L.P. v. Heritage Consol., LLC (In re Heritage Consol., LLC)*, 765 F.3d 507, 517 (5th Cir. 2014) (citing *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977)). The fact that one business "trusts another, and relies upon [its] promise to perform a contract, does not rise to a confidential relationship[,] [as] [e]very contract includes an element of trust and confidence that each party will faithfully perform." *ARA Auto. Grp. v. Cent. Garage, Inc.*, 124 F.3d 720, 725 (5th Cir. 1997) (citation omitted). Polymers and Brasil chose to enter into their arrangement, as Brasil states, for "administrative convenience." Compl. ¶ 18. Nothing distinguishes that arrangement from an ordinary supplier-distributor relationship.

Far from unjustly enriching Comerica, enforcing Comerica's security interest in this situation simply respects the reasonable commercial investment-backed expectations the Uniform Commercial Code intends to cultivate. By contrast, if a constructive trust were imposed, *Brasil* would be the unjustly enriched party: while Comerica perfected its security interest and subsequently loaned tens of millions of dollars to Polymers in reliance on the priority of that interest, Brasil made no effort to record or notice any interest it may have had in the PET collateral, let alone to document its purported arrangements with Polymers. Imposing a constructive trust would reward Brasil's negligence and simultaneously penalize Comerica's diligence.

Finally, Brasil has the burden to identify and trace the property it alleges is held in trust. *Official Comm. of Unsecured Creditors v. Columbia Gas Sys. (In re Columbia Gas Sys., Inc.)*, 997 F.2d 1039, 1063 (3d Cir. 1993). Brasil failed to carry its burden. As in *Amp'd Mobile*, it is "abundantly clear" that Polymers was not required to "segregate, or otherwise separately treat or account for" the PET purchased from Brasil, nor was Polymers under any obligation to "maintain separate accounts to hold" the proceeds. *See* 377 B.R. at 489. When funds are

commingled, the portion left to the beneficiary is presumed to represent "trust funds that have *never been dissipated*." *Id.* at 489-90 (citing *Columbia Gas*, 997 F.2d at 1063) (emphasis added). However, in this case, the Final Cash Collateral Order (ECF 487) explicitly provides that any funds expended by Polymers from its cash collateral accounts "shall be treated as having first come from the[u]nencumbered [f]unds and not the funds subject to a properly perfected, non-avoidable, first-priority, security interest or other lien in favor of Comerica." ¶ 19(c). Thus, any funds to which Brasil claims it is entitled have already been spent.

This case is much like *Monnig's, infra*, where a rug company entered into a licensing agreement by which it rented space in a department store in exchange for a commission on the rug sales. 929 F.2d at 199. The department store collected all proceeds from the sale of the rugs in the normal course and was then obligated to remit the proceeds back to the rug company, net of its commission. *Id.* The agreement did not restrict the department store's use of the proceeds from the rug sales "in any way," nor did it require the store to "deposit or disburse the funds in any particular fashion" or to segregate the rug sale proceeds. *Id.* at 199-200. Similarly, in this case, Polymers collected the proceeds from its PET sales from all of its customers and was then, at least according to the Complaint, supposed to remit to Brasil the payments due Brasil in payment of the intercompany receivable, while withholding a "small administrative fee" (i.e., a commission). In the meantime, however, Polymers was under no obligation to segregate the proceeds or to use them in any particular manner. Just like the rug company in *Monnig's*, Brasil is not entitled to the imposition of a constructive trust and is merely an unsecured trade creditor.

Likewise, this case bears a strong resemblance to *Amp'd Mobile*, in which an insurance company entered into an arrangement with a telephone service provider (the debtor) to provide certain wireless loss, theft, and damage protection to the service provider's customers. 377 B.R.

at 481.  The service provider was to bill and collect the monthly insurance premiums from its customers in the normal billing cycle and then remit the premiums to the insurer. *Id.* This Court declined to impose a constructive trust over the premiums, finding that the parties lacked "[s]ubstantial indicia supporting an inference of a fiduciary or trust relationship—such as clear and explicit language in the governing documents, affirmative statements in the governing documents that the Debtor would have no interest in the Premiums, segregation of Premiums, [or] a chronology of payments requiring the Debtor to remit only those Premiums actually received from its customers." *Id.* at 485. The relationship between Brasil and Polymers lacks precisely the same indicia. Brasil has not—and cannot—identify any evidence that it retained title to the PET product or that Polymers bore any special obligation with regard to the PET: in sum, Brasil cannot demonstrate that its relationship was anything other than an ordinary commercial relationship for the sale of goods.

Moreover, courts impose constructive trusts to prevent the wrongdoer from benefiting from its fraud or other inequitable conduct. To the extent that Brasil has offered any allegations sufficient to support its claim, Brasil has not made even a single allegation of wrongdoing against Comerica.

Furthermore, imposing a constructive trust in these circumstances would gravely undermine the important federal policy of equal treatment of classes of creditors in bankruptcy. *Cf. Orion Ref. Corp.*, 341 B.R. at 483. Brasil's argument here is effectively that it can simply circumvent the Bankruptcy Code's priority rules by creatively structuring an ordinary commercial relationship. Global companies routinely transact business in the United States through the use of domestic subsidiaries like Polymers. Imposing a constructive trust when one of these subsidiaries fails to pay its intercompany trade partner would have the effect of

reorganizing the Bankruptcy Code's priority scheme. *Haber Oil*, 12 F.3d at 436 ("Because the constructive trust doctrine can wreak such havoc with the priority system ordained by the Bankruptcy Code, bankruptcy courts are generally reluctant to impose constructive trusts without a substantial reason for doing so.")

Brasil states that Polymers "had no right to retain [the product] (for its own use or for the benefit of its creditors) without compensating" Brasil. Compl. ¶ 26. What Brasil has described is an ordinary commercial debt obligation: A company has an obligation to pay its trade creditors. Unfortunately, Polymers did not, and Brasil is not the only trade creditor that was not paid. Brasil acknowledges that it is addressing the approximately $90 million intercompany receivable owed "through claims in [Polymers's] Bankruptcy case." Compl. ¶ 20, n.3. That is the proper, and only, remedy available for Brasil's claim here.

**CONCLUSION**

For the foregoing reasons, Comerica respectfully requests that the Court dismiss Brasil's

Complaint for Imposition of a Constructive Trust.

Dated:  February 8, 2018              CONNOLLY GALLAGHER LLP

                                                   **/s/ Jeffrey C. Wisler**
                                                   Karen C. Bifferato (DE Bar No. 3279)
                                                   Jeffrey C. Wisler (DE Bar No. 2795)
                                                   Kelly M. Conlan (DE Bar No. 4786)
                                                   The Brandywine Building
                                                   1000 N. West Street, Suite 1400
                                                   Wilmington, DE 19801
                                                   Telephone: (302) 757-7300
                                                   Facsimile: (302) 757-7299
                                                   Email: kbifferato@connollygallagher.com
                                                   Email: jwisler@connollygallagher.com
                                                   Email: kconlan@connollygallagher.com

                                                   and

                                                   MILLER, CANFIELD, PADDOCK AND STONE,
                                                   P.L.C.
                                                   Jonathan S. Green, Esq.
                                                   Steven A. Roach, Esq.
                                                   Erika L. Giroux
                                                   150 West Jefferson, Suite 2500
                                                   Detroit, MI 48226
                                                   Telephone: (313) 963-6420
                                                   Facsimile: (313) 496-7500
                                                   Email: greenj@millercanfield.com
                                                   Email: roach@millercanfield.com
                                                   Email: Giroux@millercanfield.com

                                                   *Counsel to Comerica Bank*

#05369929v2