# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| M&G USA CORPORATION, *et al.*, | Case No. 17-12307 (BLS) |
| Debtors. | Jointly Administered |
| M&G Polimeros Brasil S.A., | |
| Plaintiff. | Adversary Case No: 18-50007 (BLS) |
| v. | |
| M&G Polymers USA, LLC and COMERICA BANK, | |
| Defendants. | |

## AMENDED COMPLAINT

M&G Polimeros Brasil S.A. ("Polimeros"), by and through its undersigned attorneys, for its Amended Complaint against M&G Polymers USA, LLC ("M&G Polymers") and Comerica Bank ("Comerica") seeking imposition of a constructive trust over inventory and receivables attributable and owed to Polimeros, and other appropriate relief set forth below, alleges as follows:

## NATURE OF THIS ACTION

1.      This action is necessary to prevent a grave injustice. Absent imposition of a constructive trust or other appropriate relief, compensation due and owing to Polimeros for product manufactured and sold by Polimeros will unfairly end up in the pocket of Comerica—an entity with absolutely no interest in Polimeros and no involvement in the manufacture or sale of Polimeros product.

2.　　　In the three months leading up to these Chapter 11 cases, M&G Polymers sold, on behalf of Polimeros, approximately BRL 81 million, or approximately $25 million, of polyethylene terephthalate ("PET") product manufactured by Polimeros. Presently, M&G Polymers is holding not less than $10 million in proceeds generated from such sales. For purposes of this complaint, receivables resulting from the sale of PET manufactured by Polimeros, cash generated from such receivables, and any unsold product possessed by M&G Polymers are referred to collectively as the "Polimeros Property."

3.　　　The *only* reason that M&G Polymers has (or will receive) the Polimeros Property is because M&G Polymers has acted as a conduit for sales of Polimeros product to U.S. customers. Because M&G Polymers has a back office and other administrative capabilities that Polimeros does not, Polimeros has used M&G Polymers as a middleman for sales. But M&G Polymers has **no** legitimate rights in the Polimeros Property; it has no actual ownership of the product that passes through on its way to U.S. customers of Polimeros and no right to the monies that those U.S. customers remit to M&G Polymers for payment back to Polimeros. On the contrary, M&G Polymers has a duty to remit the proceeds generated from the sale of Polimeros product to Polimeros.

4.　　　That the Polimeros Property is neither property nor assets of the Debtors' estates has been explicitly recognized by the Debtors and their Chief Restructuring Officer ("CRO"). Indeed, prior to the Petition Date, the CRO took unequivocal, documented, and specific steps to formalize and clarify the historic course of dealing between Polimeros and M&G Polymers in order to ensure that Polimeros would receive all proceeds from the sale of Polimeros product other than a small administrative fee to M&G Polymers for conducting such transactions.

5.     On a postpetition basis, and as described in the Debtors' Cash Management Motion (the "Cash Management Motion"), *see* [Docket No. 7], this formalized process was further modified so that the sale of Polimeros Property would be done through M&G Resins. Consistent with the prepetition process put in place by the CRO, the Cash Management Motion provides that Polimeros will receive the proceeds from sales of Polimeros PET to U.S. customers because such sales are conducted via M&G Resins only "for administrative convenience." *See id.* at ¶ 22.     As with the prepetition steps taken by the CRO, the provisions in the Cash Management Motion make at least one thing very clear: ***the Polimeros Property does not belong to the Debtors; it belongs to Polimeros***.

6.     Yet despite this clear, fair, and logical provision, Polimeros' right to be compensated for sales of its own PET product is now threatened by Comerica, an entity with no contractual or other relationship to Polimeros and no legitimate interest in the Polimeros Property. Indeed, based on all information presently known to Polimeros, Comerica has had absolutely no dealings with Polimeros whatsoever.

7.     What Comerica *does* have is a purported security interest in the inventory and receivables of M&G Polymers. Comerica is a lender to M&G Polymers under a $50,000,000 Amended and Restated Master Revolving Note dated December 21, 2015. This loan is secured by a September 30, 2015 Security Agreement, which provides Comerica with a security interest in "Collateral", defined under the Security Agreement as follows: "all of the following property Debtor now or later owns or has an interest in, wherever located: all Accounts and Accounts Receivable . . . all Inventory . . . all cash . . . of or pertaining to the above Collateral, . . . and all of Debtor's vendor data customarily supplied with the goods, product specifications and material safety data sheets pertaining to the Debtor's Accounts, Accounts Receivable and Inventory."

PHIL1 6854089v.1

8.     Based on this Security Agreement, Comerica claims that it is entitled to all of M&G Polymers' accounts receivable and inventory—including the Polimeros Property.

9.     Comerica is wrong as a matter of fact and law.  The Polimeros Property does not comprise "Accounts Receivable and Inventory" of M&G Polymers because, to the extent that M&G Polymers is in (or obtains) possession of the Polimeros Property, it is solely by virtue of its role as a conduit for Polimeros' sales to U.S. customers.  That the property passes through M&G Polymers does not and should not change the fact that it belongs to Polimeros; and must not be used as grounds to deprive Polimeros of compensation due and owing from the sale of its *own* PET product.

10.     In short, the Polimeros Property should not be available to satisfy M&G Polymers' prepetition obligations to Comerica—or anyone else.  Accordingly, to prevent this injustice, Polimeros filed this action on January 16, 2018, seeking imposition of a constructive trust, or other appropriate relief, with respect to the Polimeros Property, including all receivables due for Polimeros product already sold, and unsold Polimeros PET product in M&G Polymers' possession at the time of the bankruptcy filing in this matter.

11.     In response to Polimeros's complaint, Defendant Comerica filed a motion to dismiss on February 8, 2018 which attaches, characterizes, and purports to rely on extensive documentary material not referenced in the complaint.  This material provides absolutely no justification for Comerica's efforts to seize the Polimeros Property.

12.     To the contrary, the material attached by Comerica includes documents in Comerica's possession which, if anything, plainly evidence and establish that Comerica had ***actual knowledge*** that the property and proceeds at issue in this lawsuit were, and have always been, property of Polimeros rather than M&G Polymers.  Comerica's attempt to simply take the

4

Polimeros Property, despite full notice and actual knowledge that such property does not belong to M&G Polymers—and thus is not and never was Comerica's collateral—is brazen, without justification, and unjust.

13.     Accordingly, Polimeros files this Amended Complaint to address the documentary material attached to Comerica's responsive pleading, and to assert causes of action for constructive trust, unjust enrichment, and declaratory judgment that Comerica has no interest in the Polimeros Property.

## THE PARTIES

14.     Polimeros is a Brazilian company whose registered office is located at Km 10 Rodovia PE-60 – Engenho Massangana, TDR – Sul s/nº - Complexo Industrial Portuário, SUAPE - Ipojuca – CEP 55590-000 C.N.P.J.: 07.079.511/0001-9.

15.     Defendant M&G Polymers is a Delaware limited liability company with its principal place of business located at State Route 2, Apple Grove, West Virginia, 25502.  On October 24, 2017 (the "Polymers Petition Date"), M&G Polymers commenced a bankruptcy proceeding under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 17-12307.

16.     Defendant Comerica is a corporation organized and existing under the laws of the State of Texas.  Upon information and belief, M&G Polymers has certain outstanding prepetition obligations to Comerica that are secured by, among other things, certain accounts receivable of M&G Polymers.

## JURISDICTION AND VENUE

17.     This adversary proceeding is commenced pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 7001.

18.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), as well as the "Amended Standing Order of Reference" of the United States District Court for the District of Delaware, dated February 29, 2012 (Sleet, C.J.).  Polimeros confirms its consent, pursuant to rule 7008 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and Rule 7008-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Bankruptcy Rules</u>"), to entry of a final order by the Court in connection with this amended complaint to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution

19.     This    adversary    proceeding    is    a    core    proceeding    pursuant    to 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O).

## VENUE

20.     Venue is proper pursuant to 28 U.S.C § 1409(a) because this proceeding is related to Case No. 17-12307, which was brought by Debtors including M&G Polymers,[1] pursuant to the Bankruptcy Code and is currently pending in this Court.

## FACTUAL BACKGROUND[2]

### A.     M&G POLYMERS ACTS AS CONDUIT FOR THE SALE OF POLIMEROS' PRODUCT TO U.S. CUSTOMERS.

---

[1]     The Debtors in Case No. 17-12307, along with the last four digits of each debtor's federal tax identification number, are: M&G USA Corporation (3449), M&G Resins USA, LLC (3236), M&G Polymers USA, LLC (7593), M&G Finance Corporation (4230), M&G Waters USA, LLC (2195), Mossi & Ghisolfi International S.à r.l. (1270), M&G Chemicals S.A. (N/A), M&G Capital S.à r.l. (7812), M&G USA Holding, LLC (3451), Chemtex International Inc. (7695), Chemtex Far East, Ltd. (2062), and Indo American Investments, Inc. (9208). The Debtors' service address is:  450 Gears Road, Suite 240, Houston, Texas 77067.

[2]     These statements are made upon information and investigation and are, to a large extent, based on statements made by the Debtors' Chief Restructuring Officer.

21.     In the ordinary course of business, Polimeros supplies PET to both Brazilian and U.S. customers.  With respect to Brazil, sales are accomplished on a direct basis.  In the U.S., sales are accomplished by using M&G Polymers as a pass-through entity or middleman.[3]

22.     M&G Polymers' sale of PET produced by Polimeros is simple and straightforward:  Polimeros sends PET product to M&G Polymers.  M&G Polymers then provides the PET product to U.S. customers and collects payment from these customers intended for Polimeros.  As recognized by the Debtors and the CRO, the reason for this arrangement is pure administrative convenience.  Given their logistics capabilities and location in the U.S., M&G Polymers is more easily able to handle billing and other back-office functions related to U.S. sales.  M&G Polymers withholds a small administrative fee for its services out of the proceeds generated from the sale of the PET product, but M&G Polymers is not required to pay interest to Polimeros for the funds collected by M&G Polymers on behalf of Polimeros.

23.     Crucially, both M&G Polymers and Polimeros have plainly understood—at all relevant times—that the PET in question is being sold by Polimeros and that, accordingly, Polimeros is entitled to payment for its product and M&G Polymers has a duty to ensure that Polimeros receives such payment.  Indeed, the documentary material attached by Comerica to its motion to dismiss suggests that invoices are generated documenting the fact that Polimeros retains full title of the PET, and that it is not owned by M&G Polymers.

24.     Upon information and belief, the customers receiving the Polimeros PET product in question via M&G Polymers themselves know that the product is coming from Polimeros.

---

[3]     Though never implemented, the Debtors (as described in the Cash Management Motion) planned to modify this historic course of dealing on a postpetition basis by having Debtor M&G Resins USA LLC serve as a middleman for future sales of PET product manufactured by Polimeros.  *See* [Docket No. 7 at ¶ 23].

Upon information and belief, the creditors of M&G Polymers know that M&G Polymers is selling another person's goods.

25.     M&G Polymers records journal entries when the receivables accrue and M&G Polymers has no right to the receivables for the PET sold on behalf of Polimeros.   On the contrary, M&G Polymers *is required* to cause the intercompany receivables resulting from the sale of Polimeros PET product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly relates to the charge to the customer for the PET product and the payment from the customer.

26.     There has never been a contractual agreement governing the transfer and delivery of Polimeros' PET product.   Instead, Polimeros had a trusted and fiduciary relationship with several of M&G Polymers' directors. Based on this trusted and fiduciary relationship, Polimeros historically relied on M&G Polymers to transport and deliver its property.

27.     On average, M&G Polymers moved approximately $10 million of PET product on behalf of Polimeros per month through 2016.  Unfortunately, prior to the appointment of the CRO in 2017, millions of dollars in receivables for Polimeros PET product never made it out of M&G Polymers because of mismanagement, misplaced efforts to plug liquidity gaps elsewhere in the M&G structure, and/or potentially fraudulent conduct.   Instead these receivables— receivables which rightfully belonged to Polimeros—were utilized by M&G Polymers for other purposes, leaving Polimeros with nothing more than an ever-growing intercompany receivable. That intercompany receivable, which now stands at approximately $90 million, is plainly owed to Polimeros for M&G Polymers' sale of Polimeros' PET product, and remains outstanding as of the Polymers Petition Date.[4]

---

[4]     The large and as-yet-unsatisfied intercompany receivable due from M&G Polymers to Polimeros for Polimeros product sales engineered through M&G Polymers prior to Magnate's control of Polimeros will be addressed

28.     The full extent of M&G Polymers' improper withholding of Polimeros' inventory and receivables was not fully comprehended until the fall of 2017.  By the fall of 2017, three independent directors were appointed to the Polimeros board of directors in an attempt to diminish the control of the Debtors' incumbent directors.  Additionally, the CRO, in connection with other interested parties, took steps to investigate the situation.  Before that point, Polimeros remained under the control of the Debtors' directors and, as a result, no effort could be made to object to the failure by M&G Polymers to remit monies collected on Polimeros' behalf.

**B.     M&G POLYMERS AND POLIMEROS' RECENT EXTRA-CONTRACTUAL DEALINGS**

29.     Following appointment of the CRO, however, protections were instituted to ensure that the intent of the course of dealing between Polimeros and M&G Polymers was honored and Polimeros would no longer be unfairly denied receivables rightly owed for the sale of Polimeros PET product by M&G Polymers as an intermediary or conduit.

30.     The parties still did not enter into contract regarding the transfer and delivery of Polimeros' property.  Instead, beginning in September 2017, the CRO took steps to formalize the system for conducting pass-through transactions from Polimeros through M&G Polymers to U.S. customers.  Under this new arrangement, Polimeros sent PET product to M&G Polymers to be sold in the U.S. market and invoiced M&G Polymers for the cost of such PET product.  M&G Polymers was then obligated to use the proceeds generated by the PET product sales to satisfy the invoices of Polimeros, while retaining any excess proceeds to cover its own administrative functions.  The primary purpose of the new system was to ensure proper payment and

---

through claims in the Bankruptcy case.  This adversary proceeding concerns inventory and outstanding receivables for Polimeros sales under the auspices of the CRO, following his appointment.

accounting; M&G Polymers' historic role as an administrator and conduit for receivables from the sale of Polimeros PET product was to remain unchanged.

31.     Even though there was no contractual arrangement between the parties, the Debtors' CRO assured them that he would "ensure that a mechanism exists to re-direct the monies back to Brazil (less a local commission of sorts to cover handling costs)." Polimeros continued to provide PET product to M&G Polymers on this basis.

32.     This arrangement between Polimeros and M&G Polymers was maintained by the Debtors until the Polymers Petition Date, but because of the relatively short time frame, no significant receivables were collected by M&G Polymers for the sale of Polimeros PET product prior to the Polymers Petition Date. Additionally because of this short time frame, certain of the Polimeros PET product provided to M&G Polymers by Polimeros for sale to U.S. customers remained at M&G Polymers as of the Polymers Petition Date.

33.     Subsequent to the Polymers Petition Date, as described more fully in the Debtors' Cash Management Motion, the CRO revised the administrative arrangement so that, moving forward, Polimeros would no longer provide PET product to M&G Polymers, but to M&G Resins. *See* [Docket No. 7 at ¶ 23].[5] But the fair—and logical—underpinning to the CRO's approach remains unchanged: Polimeros should receive the proceeds from the sale of Polimeros PET product to U.S. customers where such sales are conducted "for administrative convenience." *See id.* As described in the Cash Management Motion, such transactions "maximize and appropriately allocate value for the materials and services the Debtors and their affiliates provide." *Id.* at ¶ 25.

---

[5]     As described *supra*, this postpetition process, though referenced in the Cash Management Motion, was never fully implemented by the Debtors. At present, there is no ongoing sale by the Debtors of PET product manufactured by Polimeros.

PHIL1 6854089v.1

C. **COMERICA'S ACTUAL KNOWLEDGE OF POLIMEROS' OWNERSHIP OF THE PET AND PROCEEDS.**

34.    While Polimeros did not enter into a contract with M&G Polymers, invoices attached by Comerica to its motion to dismiss clearly reflect that Polimeros continued to own the PET product delivered to M&G Polymers in its capacity as conduit for sales of this product to customers.

35.    These invoices clearly state, on their face, that the delivery is made to M&G Polymers *as a consignee*.  An example is shown below:



36.    Thus, while there was no contractual relationship governing the delivery of the PET, to the extent the invoices attached by Comerica created any "contractual" relationship between M&G Polymers and Polimeros, the "contract" created merely evidences the consignment arrangement between M&G Polymers and Polimeros.  At no time, under any contractual or quasi-contractual theory, did title of the PET pass from Polimeros to M&G Polymer

11

37.     These invoices reflected the reality of the transaction with M&G Polymers: the PET was at all times Polimeros' property, and was merely being delivered to M&G Polymers for transport and sale in its capacity as a middleman.

38.     Upon information and belief, this arrangement was common knowledge at M&G Polymers and Polimeros, and it was at all relevant times generally known by M&G Polymers' creditors that it was substantially engaged in selling the goods of others.

39.     For its part, Defendant Comerica had actual knowledge that M&G Polymers owned no interest in the Polimeros PET product or any receivables due to Polimeros from the sale of this product.  Comerica thus could not reasonably assume that any such product or receivables — including the Polimeros Property at issue here — were included in the collateral for its loan to M&G Polymers.

40.     After Polimeros initiated this action, Comerica filed a motion to dismiss. Attached to its motion were 40 pages of invoices, all reflecting actual knowledge by Comerica that M&G Polymers received Polimeros' PET product as a ***consignee***.

41.     Comerica lent money to M&G Polymers pursuant to an "Asset Based Loan" commonly referred to an an "ABL."  Under the terms of this loan, Comerica actively monitored the assets that comprised its "borrowing base."

42.     Upon information and belief, at no time did Comerica ever consider Polimeros' PET product to comprise any portion of its borrowing base.  On the contrary, upon information and belief, at all times Comerica understood Polimeros' PET product — including the Polimeros Property at issue here — *belonged to Polimeros*.

43.     Despite this actual knowledge — and despite the fact that it has absolutely no relationship with Polimeros — Comerica now seeks to unjustly enrich itself and deprive

Polimeros by pocketing the Polimeros Property in its entirety and without any legitimate ground to do so.

**D.    M&G POLYMERS HISTORY OF UNJUSTLY ENRICHING ITSELF AT POLIMEROS' EXPENSE.**

44.    The diversion of Polimeros PET product was a continuation of longstanding conduct by the debtor's directors to divert property from Polimeros to M&G Polymers.  On information and belief this included incurring debts in Polimeros' name and transferring the proceeds to M&G Polymers.

45.     The conversion of Polimeros' PET Property was a continuation of this scheme. Despite a confidential relationship and owing Polimeros' fiduciary duties, the Debtor's directors diverted PET and proceeds owned by Polimeros and used them to enrich M&G Polymers and the other Debtor affiliates.

46.    Unfortunately, much of this property has been transferred and its whereabouts are presently unknown.  However, the remaining Polimeros Property — in excess of $10 million — can be directly traced to M&G Polymers.

**E.    THE FINAL ORDER GIVES COMERICA EXCLUSIVE CONTROL OVER THE POLIMEROS INVENTORY AND RECEIVABLES PREVIOUSLY HELD BY M&G POLYMERS.**

47.    Absent appropriate relief from this Court, the steps taken by the CRO to ensure that Polimeros was no longer robbed of its receivables and product, but instead received compensation for the Polimeros Property, will be swept aside by Comerica's unreasonable interpretation of its security interest in M&G Polymers' assets.  Indeed, M&G Polymers and Comerica seek to deny Polimeros any receivables or compensation for the Polimeros Property— property that M&G Polymers is obligated to remit to Polimeros—by claiming that inventory and receivables that belong to Polimeros but happen to be in the possession of M&G Polymers

13

should be available to satisfy M&G Polymers' prepetition obligations to Comerica. M&G Polymers and Comerica take this position without regard to the fact that, as described above, M&G Polymers handled Polimeros' product and related receivables "for administrative convenience" **only**, and had no right to retain it (for its own use or for the benefit of its creditors) without adequately compensating Polimeros. To the contrary, M&G Polymers must compensate Polimeros for the pass-through sale of Polimeros PET product.

48.     Comerica is a lender to M&G Polymers under a $50,000,000 Amended and Restated Master Revolving Note dated December 21, 2015. This loan is secured by a September 30, 2015 Security Agreement which provides Comerica with a security interest in "Collateral," defined under the Security Agreement as follows: "all of the following property Debtor now or later owns or has an interest in, wherever located: all Accounts and Accounts Receivable . . . all Inventory . . . all cash . . . of or pertaining to the above Collateral, . . . and all of Debtor's vendor data customarily supplied with the goods, product specifications and material safety data sheets pertaining to the Debtor's Accounts, Accounts Receivable and Inventory." As a result of a default by M&G Polymers on the Comerica Loan, Comerica filed a complaint on October 20, 2017, with the United States District Court for the Eastern District of Michigan seeking the appointment of a receiver to take control of the collateral securing the Comerica Loan. The Debtors were unable to resolve this dispute and, as a result, M&G Polymers commenced its chapter 11 case on the Polymers Petition Date.

49.     Despite the fact that M&G Polymers and its CRO acknowledge that the sale of Polimeros' PET product to U.S. customers was done for "administrative convenience," and should therefore be remitted to Polimeros, on December 14, 2017, this Court entered an *Final Order Pursuant to 11 U.S.C §§ 105, 361, 362, 363 AND 507 (1) Authorizing Use of Cash*

14

*Collateral (2) Granting Adequate Protection, (3) Modifying the Automatic Stay, and (4) Scheduling a Final Hearing* [Docket No. 487] (the "Final Order"), which, among other things, places all proceeds of accounts and accounts receivable of M&G Polymers and the sales and other dispositions of M&G Polymers' inventory under the exclusive control of Comerica pending resolution of any Challenge (as defined in the Final Order). Specifically, the Final Order provides that "Comerica shall receive payment of the Prepetition Obligations (as defined in the Final Order) from the proceeds of the Prepetition Collateral (as defined in the Final Order) and Post-Petition Collateral (as defined in the Final Order) as set forth in paragraphs 4 and 8 (collectively, the "Adequate Protection Payments")." (Docket No. 487 at ¶ 5(a)).

50.     Paragraph 8 of the Final Order, governing "Application of Proceeds of Collateral to Prepetition Obligations," further provides:

(a) ***All proceeds of Accounts and Accounts Receivable of Debtor and the sales and other dispositions of Inventory of Debtor, upon receipt by Debtor at any time after entry of the Interim Order (other than amounts on deposit in the Comerica Collateral Account), including amounts subject to paragraph 4(b) of this Final Order, shall be delivered to Comerica in the form received, and deposited into a segregated cash collateral account (account ending in \*452) maintained by, and under the exclusive control of, Comerica (the "Comerica Collection Account").    The mere depositing of cash into the Comerica Collection Account shall not, in and of itself, prejudice the rights of any party to assert a superior interest in such cash***.

(b) Upon the expiration of the Challenge Period, and subject to the funding obligations in paragraph 4, Comerica shall have the right to and may apply to the Prepetition Obligations any cash in the Comerica Collateral Account and any cash now or hereafter on deposit in the Comerica Collateral Account, in each case, that is not the subject of a Challenge without further Court Order. If a Challenge is made during the Challenge Period, then, upon the resolution of the Challenge, Comerica shall have the right to apply to the Prepetition Obligations any cash in the segregated cash collateral account that is subject to such Challenge in accordance with the resolution of the Challenge at the time of such resolution.

(c) Notwithstanding anything to the contrary in this Final Order, Comerica shall not have the right to apply to the Prepetition Obligations any cash in the Comerica

15

Collection Account or the Comerica Collateral Account except in accordance with this paragraph 8.

(Docket No. 487 at ¶ 8(a–c)) (emphasis added).

51.     The proceeds of M&G Polymers' accounts and accounts receivable and the sales and other dispositions of M&G Polymers' inventory, which are being diverted to Comerica to satisfy M&G Polymers' prepetition obligations to Comerica, improperly include the Polimeros Property—receivables and inventory handled and held by M&G Polymers on behalf of Polimeros for administrative convenience only.

52.     The Polimeros Property is not—and never has been—"accounts receivable or inventory" of M&G Polymers, is not properly part of the estate of M&G Polymers, and must not be converted by Comerica in its effort to recover on its loan to M&G Polymers or any other party seeking to assert a claim in connection with M&G Polymers' bankruptcy.

## COUNT I - CONSTRUCTIVE TRUST
### (Against M&G Polymers and Comerica)

53.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

54.     Though Polimeros had no contractual arrangement with M&G Polymers regarding M&G Polymers' role as an administrative conduit for sales of Polimeros product to U.S. customers, Polimeros relied on the ongoing assurances M&G Polymers gave to Polimeros that M&G Polymers would apportion payments collected for its sales of Polimeros' product to Polimeros in the form of intercompany receivables.

55.     The status of the two companies as subsidiaries of M&G Chemicals SA, as well as M&G Polymers' assurances that the receivables resulting from sales of Polimeros' PET

product would be rightfully returned to Polimeros, among other things, created a relationship of trust and confidence between Polimeros and M&G Polymers.

56.     M&G Polymers was required to cause the intercompany receivables resulting from sales of Polimeros product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly related to and depended upon the charge to the customer for the product and the payment from the customer.

57.     The Polimeros receivables accrued immediately upon M&G Polymer's receipt of the product, and M&G Polymers kept journal entries to document that accrual.

58.     M&G Polymers was not required to pay interest to Polimeros for the funds collected by M&G Polymers on Polimeros' behalf.

59.     As a result of M&G Polymers' mismanagement or good faith but misplaced efforts to plug liquidity gaps elsewhere in the M&G structure (and potentially fraudulent conduct), millions of dollars in receivables for Polimeros' PET never made it out of M&G Polymers and M&G Polymers held Polimeros inventory worth millions of dollars prepetition.

60.     Based on the Final Order, Comerica presently has exclusive control over the Polimeros Property that was previously held by M&G Polymers.

61.     Because M&G Polymers acted as a mere conduit in collecting money on behalf of Polimeros and had no equitable interest over the Polimeros inventory or receivables, the Polimeros Property are not property of the M&G Polymers estate and it would be unfair to capture it in the property under Comerica's control.

62.     M&G Polymers and Comerica have been and continue to be unjustly enriched by retaining possession of the Polimeros Property, simply because M&G Polymers served an

17

administrative function in transporting Polimeros' inventory to customers and collecting such receivables.

63.     Without the imposition of a constructive trust, more than $10 million due and owing to Polimeros for PET product it supplied to customers—for which Polimeros never received payment—would improperly become part of M&G Polymer's bankruptcy estate.  And Polimeros would be deprived of receivables obtained from sales of as-yet-unsold Polimeros product held by M&G Polymers and seized by Comerica.

64.     The Court should exercise its equitable power to impose a constructive trust for the benefit of Polimeros over the Polimeros Property previously held by M&G Polymers and now claimed by Comerica.


## COUNT II - UNJUST ENRICHMENT
### (Against M&G Polymers)

65.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

66.     Though Polimeros had no contractual arrangement with M&G Polymers regarding M&G Polymers' role as an administrative conduit for sales of Polimeros product to U.S. customers, Polimeros relied on the ongoing assurances M&G Polymers gave to Polimeros that M&G Polymers would apportion payments collected for its sales of Polimeros' product to Polimeros in the form of intercompany receivables.

67.     The status of the two companies as subsidiaries of M&G Chemicals SA, as well as M&G Polymers' assurances that the receivables resulting from sales of Polimeros' PET

18

product would be rightfully returned to Polimeros, among other things, created a relationship of trust and confidence between Polimeros and M&G Polymers.

68.     M&G Polymers was required to cause the intercompany receivables resulting from sales of Polimeros product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly related to and depended upon the charge to the customer for the product and the payment from the customer.

69.     The Polimeros receivables accrued immediately upon M&G Polymers' receipt of the product, and M&G Polymers kept journal entries to document that accrual.

70.     M&G Polymers was not required to pay interest to Polimeros for the funds collected by M&G Polymers on Polimeros' behalf.

71.     As a result of M&G Polymers' mismanagement or good faith but misplaced efforts to plug liquidity gaps elsewhere in the M&G structure (and potentially fraudulent conduct), millions of dollars in receivables for Polimeros' PET never made it out of M&G Polymers and M&G Polymers held Polimeros inventory worth millions of dollars prepetition.

72.     Based on the Final Order, Comerica presently has exclusive control over the Polimeros Property that was previously held by M&G Polymers.

73.     Because M&G Polymers acted as a mere conduit in collecting money on behalf of Polimeros and had no equitable interest over the Polimeros inventory or receivables, the Polimeros Property is not property of the M&G Polymers estate and it would be unfair to capture it in the property under Comerica's control.

74.     M&G Polymers has been and continues to be unjustly enriched by retaining possession of the Polimeros Property, simply because M&G Polymers served an administrative function in transporting Polimeros' inventory to customers and collecting such receivables.

75.     Because of the unjust enrichment of M&G Polymers, Polimeros has been impoverished without justification.

76.     There is no remedy at law that will redress Polimeros's resulting impoverishment. Without the imposition of a constructive trust, more than $10 million of Polimeros' PET product would improperly become part of M&G Polymers' bankruptcy estate. The Court should exercise its equitable power to impose a constructive trust for the benefit of Polimeros over the Polimeros Property previously held by M&G Polymers and now claimed by Comerica.

## COUNT III - UNJUST ENRICHMENT
### (Against Comerica)

77.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

78.     Though Polimeros had no contractual arrangement with M&G Polymers regarding M&G Polymers' role as an administrative conduit for sales of Polimeros product to U.S. customers, Polimeros relied on the ongoing assurances M&G Polymers gave to Polimeros that M&G Polymers would apportion payments collected for its sales of Polimeros' product to Polimeros in the form of intercompany receivables.

79.     The status of the two companies as subsidiaries of M&G Chemicals SA, as well as M&G Polymers' assurances that the receivables resulting from sales of Polimeros' PET product would be rightfully returned to Polimeros, among other things, created a relationship of trust and confidence between Polimeros and M&G Polymers.

80.     M&G Polymers was required to cause the intercompany receivables resulting from sales of Polimeros product to U.S. customers to be remitted to Polimeros, and the amount of the receivables directly related to and depended upon the charge to the customer for the product and the payment from the customer.

PHIL1 6854089v.1

81.     The Polimeros receivables accrued immediately upon M&G Polymer's receipt of the product, and M&G Polymers kept journal entries to document that accrual.

82.     M&G Polymers was not required to pay interest to Polimeros for the funds collected by M&G Polymers on Polimeros' behalf.

83.     As a result of M&G Polymers' mismanagement or good faith but misplaced efforts to plug liquidity gaps elsewhere in the M&G structure (and potentially fraudulent conduct), millions of dollars in receivables for Polimeros' PET never made it out of M&G Polymers and M&G Polymers held Polimeros inventory worth millions of dollars prepetition.

84.     Based on the Final Order, Comerica presently has exclusive control over the Polimeros Property that was previously held by M&G Polymers.

85.     Because M&G Polymers acted as a mere conduit in collecting money on behalf of Polimeros and had no equitable interest over the Polimeros inventory or receivables, the Polimeros Property are not property of the M&G Polymers estate and it would be unfair to capture it in the property under Comerica's control.

86.     Comerica has been and continues to be unjustly enriched by retaining possession of the Polimeros Property, simply because M&G Polymers served an administrative function in transporting Polimeros' inventory to customers and collecting such receivables.

87.     Because of the unjust enrichment of Comerica, Polimeros has been impoverished without justification.

88.     There is no remedy at law that will address Polimeros' resulting impoverishment. Without the imposition of a constructive trust, more than $10 million of Polimeros' PET product would improperly become part of M&G Polymers' bankruptcy estate. And Polimeros would be deprived of receivables obtained from sales of as-yet-unsold Polimeros product held by M&G

Polymers and seized by Comerica. The Court should exercise its equitable power to impose a constructive trust for the benefit of Polimeros over the Polimeros Property previously held by M&G Polymers and now claimed by Comerica.

## COUNT IV - DECLARATORY JUDGMENT
### (Against All Defendants)

89.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

90.     Pursuant to Federal Rule of Bankruptcy 7001, this Court is authorized to issue a declaratory judgment.

91.     There is an actual dispute concerning the title to the Polimeros Property claimed by Comerica.  There was no contract governing the delivery of the PET; or, in the alternative, any contractual agreement that arose was between a consignor and a consignee, and created a consignment of Polimeros' property.

92.     This dispute presents an actual, present controversy of a justiciable nature concerning the parties' respective rights and obligations, which the Court is authorized to decide.

93.     Polimeros has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Polimeros respectfully prays that this Court enter a judgment in favor of Polimeros, and: (1) impose a constructive trust for the benefit of Polimeros over the Polimeros inventory and receivables previously held by M&G Polymers and now held by Comerica; (2) enter a declaration that Polimeros properly holds title to the inventory and receivables previously held by M&G Polymers as Consignee and now held by Debtors and/or Comerica; (3) award Polimeros its costs, including reasonable attorneys' fees; and (4) grant Polimeros such other and further relief as the Court deems necessary or appropriate.

PHIL1 6854089v.1

Dated: March 1, 2018           */s/ Michael W. Yurkewicz*
Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**
Domenic E. Pacitti, Esq. (DE Bar No. 3989)
Michael W. Yurkewicz, Esq. (DE Bar No. 4165)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone: (302) 426-1189
Facsimile: (302) 426-9193

-and-

Morton R. Branzburg, Esq. (admitted *pro hac vice*)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone: (215) 569-2700
Facsimile: (215) 568-6603

-and-

**KIRKLAND & ELLIS LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Joshua Greenblatt, P.C. (admitted *pro hac vice*)
Yates M. French (admitted *pro hac vice*)
Jeremy David Evans (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022-4611
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

-and-

James H.M. Sprayregen, P.C.
Marc Kieselstein, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Counsel to M&G Polimeros Brasil S.A.*